Filed 5/26/22  P. v. Frahs CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | G060222 |
| v. | (Super. Ct. No. 16CF0837) |
| ERIC JASON FRAHS, | O P I N I O N |
| Defendant and Appellant. | |

Appeal from an order of the Superior Court of Orange County, Steven D. Bromberg, Judge.  Affirmed.

Susan L. Ferguson, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Natasha Cortina, Acting Assistant Attorney General, Daniel J. Hilton and Steve Oetting, Deputy Attorneys General, for Plaintiff and Respondent.

*          *          *

Defendant Eric Jason Frahs has a history of mental illness and a lengthy criminal record. In 2015, Frahs was convicted of an assault with a deadly weapon. According to a probation report, Frahs "engaged in a physical altercation, during which time the defendant cut the victim's face with a broken beer bottle."

Most recently, Frahs was convicted of two *Estes* robbery counts. (See *People v. Estes* (1983) 147 Cal.App.3d 23.) While attempting to steal beverages from a store, Frahs engaged in a physical altercation with two store workers; one of them "was hit in the head and fell down." (*People v. Frahs* (2018) 27 Cal.App.5th 784, 787 (*Frahs I*), affirmed and remanded by *People v. Frahs* (2020) 9 Cal.5th 618 (*Frahs II*).)

On remand, Frahs requested retroactive mental health diversion. (See Pen. Code, § 1001.36, subd. (b)(1)(F).)[1] The trial court judge denied Frahs' request because, "I do believe that he is unreasonably dangerous to the public."

We find no abuse of the trial court's discretion. Thus, we affirm the court's order denying Frahs' request for mental health diversion.


I

FACTS AND PROCEDURAL BACKGROUND

"On March 31, 2016, at about 8:00 a.m., Frahs entered a small market in Santa Ana. J. Kim, the store's owner, refused to sell Frahs a beer; a week earlier Frahs had tried to steal a pack of cigarettes. Frahs went outside of the store and began picking up rocks and throwing them at cars that were passing by. Frahs then reentered the store and walked towards the cooler. Frahs grabbed a can of beer and a can of Red Bull. Kim and his son stood at the front door in order to block Frahs from leaving. Frahs rushed towards the door and tried to push his way through. During the ensuing confrontation, Kim was hit in the head and fell down." (*Frahs I, supra*, 27 Cal.App.5th at p. 787.)

---

[1] Further undesignated statutory references are to the Penal Code.

*Trial Court Proceedings*

"Frahs testified in his own defense. Frahs said that in his early 20s he began hallucinating and experiencing delusions (he was 30 years old at the time of the trial). Frahs said that he thought his computer hard drive and birds were talking to him. Frahs testified that he has been hospitalized about eight times. Frahs said that he had been homeless for about two years, and every time he has been in trouble with the law it was due to his mental health issues. Frahs testified that just before entering the market, he thought an angel had flown by on a horse and talked to him.

"Dr. Richard Lettieri, a clinical and forensic psychologist, testified that he had reviewed a report from a hospital where Frahs had been confined. Lettieri said that most psychiatric patients are temporarily confined for only three to 14 days to stabilize them on medication; however, Frahs had been confined for about four months, which indicates that Frahs had been very ill and very unstable. Lettieri testified that Frahs had been diagnosed with schizoaffective disorder, which is 'a combination of schizophrenia and bipolar disorder.' Lettieri said that Frahs had been prescribed various medications over the years to include 'antidepressants, mood stabilizers, and antipsychotics.'

"The jury found Frahs guilty of the two second degree felony robbery counts and a lesser-included misdemeanor charge. . . . The court imposed a prison sentence of nine years, which included a sentence enhancement (low term doubled) for the alleged prior strike conviction [assault with a deadly weapon]." (*Frahs I*, *supra*, 27 Cal.App.5th at pp. 787-788.)

*Appellate Court Proceedings*

While Frahs' matter was pending on appeal, the Legislature created a new mental health diversion program. (§ 1001.36, subd. (a).) This court held the program applied retroactively; therefore, we conditionally reversed Frahs' convictions and remanded the matter for a hearing: "If the trial court finds that Frahs suffers from a

3

mental disorder, does not pose an unreasonable risk of danger to public safety, and otherwise meets the six statutory criteria (as nearly as possible given the postconviction procedural posture of this case), then the court may grant diversion. If Frahs successfully completes diversion, then the court shall dismiss the charges. However, if the court determines that Frahs does not meet the criteria under section 1001.36, or if Frahs does not successfully complete diversion, then his convictions and sentence shall be reinstated." (*Frahs I*, *supra*, 27 Cal.App.5th at p. 792.)

The California Supreme Court agreed with this court's holding and disposition, though it expressed "no view regarding whether defendant will be able to show eligibility on remand or whether the trial court should exercise its discretion to grant diversion if it finds him eligible." (*Frahs II*, *supra*, 9 Cal.5th at pp. 624-625.)

*Proceedings Following Remand*

After remand, Frahs filed a motion in the trial court requesting retroactive mental health diversion. Frahs provided an earlier psychological report, in which Dr. Lettieri stated, "Frahs was clearly psychotic at the time of the offense." Frahs also provided a new report, in which another psychologist, Dr. Adrienne M. Meier, stated Frahs meets the "criteria for *Schizoaffective Disorder*" and "also has a substantial history of substance use, largely consisting of alcohol use."

The prosecution filed an opposition: "The defendant was found guilty by a jury at trial of two strike offenses and the court found true that he suffered a prior strike conviction . . . ." As to the prior assault with a deadly weapon charge, Frahs "engaged in a physical altercation, during which time the defendant cut the victim's face with a broken beer bottle." The prosecution listed Frahs' prior misdemeanor convictions: 2006 - theft; 2007 - violation of a court order; 2010 - theft with a prior conviction, child annoyance, sexual battery, attempted theft, burglary, driving under the influence; 2015 - attempted theft; 2016 - vandalism, simple assault. The prosecution argued: "If anything,

4

Dr. Meier's report indicates that when the defendant relapses or abuses substances, he acts out violently. And there is no evidence present that can assure the Court that the Defendant will not relapse and act out violently again."

The trial court conducted a hearing concerning Frahs' motion for mental health diversion. After reviewing the pleadings and listening to oral argument, the court denied the motion and reinstated the judgment (the court's ruling will be covered in greater detail in the discussion section of this opinion).

II

DISCUSSION

Frahs argues the trial court abused its discretion by denying his request for mental health diversion. In this discussion, we will: A) review applicable principles of law; B) summarize the trial court's ruling; and C) analyze the law as applied to the facts.

A. *Applicable Principles of Law*

In 2018, the Legislature created a diversion program for persons with mental health illnesses. (§ 1001.36.) A trial court may grant diversion to a defendant when the court determines he or she suffers from a specified illness (e.g., schizophrenia, bipolar disorder), and "the defendant's mental disorder was a significant factor in the commission of the charged offense." (§ 1001.36, subd. (b)(1)(B).) After a defendant completes two years of pretrial diversion, including a mental health treatment program, the defendant's criminal case may be dismissed. (§ 1001.36, subds. (c)(3), (e).)

"Evidence of the defendant's mental disorder shall be provided by the defense and shall include a recent diagnosis by a qualified mental health expert. In opining that a defendant suffers from a qualifying disorder, the qualified mental health expert may rely on an examination of the defendant, the defendant's medical records, arrest reports, or any other relevant evidence." (§ 1001.36, subd. (b)(1)(A).)

5

For a defendant to be found eligible, "The court [must be] satisfied that the defendant will not pose an unreasonable risk of danger to public safety, as defined in Section 1170.18, if treated in the community. The court may consider the opinions of the district attorney, the defense, or a qualified mental health expert, and may consider the defendant's violence and criminal history, the current charged offense, and any other factors that the court deems appropriate." (§ 1001.36, subd. (b)(1)(F).)

When determining whether a defendant poses a "risk of danger to public safety," the court's determination is confined to the likelihood the defendant will commit a subset of the most violent strike offenses, commonly known as super-strike offenses (murder, attempted murder, sex crimes against children, etc.). (*People v. Williams* (2021) 63 Cal.App.5th 990, 1001 (*Williams*); §§ 1170.18, 667, subd. (e)(2)(c)(iv).)

We review a trial court's order denying mental health diversion for an abuse of discretion. (*People v. Moine* (2021) 62 Cal.App.5th 440, 448 (*Moine*); *People v. Curry* (2021) 62 Cal.App.5th 314, 324 ["the trial court, being in the best position to decide the matter, has broad discretion to determine whether a given defendant is a good candidate for mental health diversion"].)

There are varying degrees of deference within the abuse of discretion standard of review. (*Haraguchi v. Superior Court* (2008) 43 Cal.4th 706, 711-712.) A "trial court's findings of fact are reviewed for substantial evidence, its conclusions of law are reviewed de novo, and its application of the law to the facts is reversible only if arbitrary and capricious." (*Ibid*., fns. omitted.)

*B. The Trial Court's Ruling*

At the conclusion of the eligibility hearing, the trial court announced its ruling, which denied Frahs' request for retroactive mental health diversion. Given the deferential standard of review, we will quote at length from the court's ruling:

"It was an *Estes* robbery. I give you that. But it was probably the most

6

exaggerated *Estes* robbery I've seen in a long, long time. Very, very difficult one. And he did receive a very heavy sentence on this case. No question about that. I get that.

"I can't allow the nature of the sentence, . . . that is not a factor I can consider because this is not a resentencing hearing, so that's why I'm looking at the facts of the case. And my heart goes out to the family. I feel bad for Mr. Frahs. I see what is going on. I saw Dr. Lettieri's testimony, and he has high credibility in this court. Dr. Meier, I read her report. Very much -- very similar to many other reports that she writes. That's okay. That's what the facts are.

"And it's a bothersome situation. . . . Mr. Frahs was doing well until around mid 2012. He was doing pretty good. And then he had those breaks, bad breaks, and things happened. And he has a serious drug and alcohol history. Statistics and history will show us that that doesn't just go away. It has mental health issues. No one is going to deny that they're serious. And state prison is a difficult place for somebody who is in a situation where they have mental health incapacities. That's a problem.

"But what I have to look at is does he pose an unreasonable danger to the public because of what he does? That's where his history comes in. I will look at that. Mostly misdemeanor cases. I get that. But sometimes there's a fine line between a misdemeanor and felonies, especially with an assault.

"And here we have the situation in the store and then outside of the store. His criminal history, I stopped counting. . . . And what is that relating to? Sure. It's relating to his mental health condition. I understand that.

"His psychiatric history, I think we discussed this last time. I believe it was mostly there for observation on many of his cases because he has been seeking help. The family has been trying. I know that. But it's not working. And that's the concern that I have. It's not working. . . .

"Well, prison is not a great place for someone that has mental health issues, and that's the way our structure is. And it it's kind of lousy. I don't have to tell you guys

7

that.  I know you know that.  Everyone in this business knows that.  It's lousy, but that's what we have.

"So he's either taken away and helped as minimally as they can -- and that is what they do in state prison.  I understand that -- or he's put back out onto the street in a program, and those programs are for the most part outpatient programs.  Inpatient could work too, I suppose.

"But with his history -- and that is what I have to look at also -- it hasn't worked.  I feel bad for him.  I feel bad for his family because that's not the way we're supposed to be living as human beings, but this is what it is. . . .

"And I think that makes his situation that much more difficult.  And I can tell you I weighed this issue back and forth in my head.  I didn't stop thinking about it.  But at the end of the day, my very, very strong sense based on everything that I've seen is that I truly do believe that he's unreasonably dangerous to the public.  And I do not believe -- super strike, yeah.  The super strike case, I'm very familiar with that.  For what has happened, I think anybody nowadays can wind up committing a super strike.  They can get their hands on a flame thrower, that kind of situation.  I think he's capable of doing that.  I truly do, because of his history.

"The fact that we characterize them as misdemeanors and felonies, that's fine.  Sometimes they're very close also.  We also know sometimes they're [plea bargained].  But I do believe that he is unreasonably dangerous to the public.

"It pains me.  It does.  I'll be candid with you.  I'm denying the request for mental health diversion."  The court also reinstated the judgment.


*C.  Analysis and Application*

It is apparent from the trial court's ruling that it was familiar with the relevant facts.  Those facts included the circumstances of the *Estes* robbery, Frahs' criminal history, and the two psychological reports.  The court was also apparently aware

8

of the legal standards for a finding of dangerousness. That is, the court needed to find it likely Frahs would commit a super-strike offense (e.g., murder or attempted murder).

Based on the facts of the underlying *Estes* robbery, Frahs' lengthy criminal history (including violent crimes), and its consideration of the psychological reports, the court concluded within its discretion that it would not grant Frahs mental health diversion because, "I do believe that he is unreasonably dangerous to the public."

While other courts may have reasonably ruled otherwise, we find the trial court did not reach its decision in an arbitrary and/or capricious manner. (See *Haraguchi v. Superior Court*, *supra*, 43 Cal.4th at pp. 711-712.) In other words, we find no abuse of the court's discretion. (See *People v. Carmony* (2004) 33 Cal.4th 367, 376-377 ["a trial court does not abuse its discretion unless its decision is so irrational or arbitrary that no reasonable person could agree with it"].) Thus, we affirm the court's order, which denied Frahs' request for mental health diversion.

Frahs argues the holdings in *Williams*, *supra*, 63 Cal.App.5th 990, and *Moine*, *supra*, 62 Cal.App.5th 440, compel a different result. We disagree.

In *Williams*, the prosecution charged defendant with one count of felony stalking, because of "an unrelenting campaign of extremely vicious and threatening harassment" against two business owners. (*Williams*, *supra*, 63 Cal.App.5th at p. 993.) The prosecution also charged one count of making criminal threats because defendant had sent "angry and threatening letters every few months to one of his neighbors . . . ." (*Ibid*.) The Court of Appeal concluded the trial court erred in finding defendant posed an unreasonable risk of danger to public safety for purposes of mental health diversion. (*Id*. at p. 999.) The appellate court noted defendant "has *no* prior criminal record . . . and, for all of his horrific threats, he never actually assaulted anyone or engaged in any violence." (*Id*. at p. 1003.) The appellate court also found significant defendant had been "released on bond for more than two years without incident." (*Ibid*.)

In *Moine*, the prosecution charged defendant with three counts of assault

and two counts of making criminal threats against the employees of two medical offices. (*Moine*, *supra*, 62 Cal.App.5th at pp. 445-446.) The Court of Appeal concluded the trial court erred in finding defendant posed an unreasonable risk of danger to public safety for purposes of mental health diversion. (*Id.* at p. 444.) The appellate court noted defendant had four prior misdemeanor convictions, but none of the "past convictions involved a violent felony, let alone a super-strike felony." (*Id.* at p. 450.) The appellate court also found it significant that the trial court had released defendant "into the community on bond for a period of over two years, which indicates the court necessarily found that [defendant] was not likely to cause 'great bodily harm to others' if released. [Citation.] It is logically inconsistent to deny mental health diversion on the ground that [defendant] was likely to commit a super-strike offense, while simultaneously finding he was not likely to inflict great bodily injury on persons in the community." (*Id.* at p. 451.)

Here, unlike the defendants in *Williams and Moine*, Frahs had an extensive criminal record, which included crimes of violence (e.g., sexual battery, assault with a deadly weapon, and two robbery counts). While Frahs' prior convictions were mostly misdemeanors, the general severity of his crimes was increasing (the last three convictions were all felony strikes). And although none of Frahs' prior convictions were super strikes, the assault with a deadly weapon conviction (a broken beer bottle to a victim's face) appears to be a significantly dangerous crime. Further, the trial court did not release Frahs from custody prior to his jury trial on the two *Estes* robbery counts, a mitigating circumstance which the appellate courts found particularly significant in both the *Williams* and *Moine* opinions.

In sum, the *Williams* and *Moine* opinions do not alter our analysis. Again, we find the trial court acted within its discretion in impliedly finding Frahs was likely to commit a super-strike offense (perhaps murder or attempted murder) if the court would have granted Frahs' request for retroactive mental health diversion.

Frahs also argues the trial "court did not understand the appropriate

10

standard for determining dangerousness under section 1001.36." In support of this argument, Frahs quotes this paragraph from the transcript: "'The super strike case, I'm very familiar with that. For what has happened, I think anybody nowadays can wind up committing a super strike [if] they can get their hands on a flame thrower, that kind of situation. I think he's capable of doing that. I truly do, because of his history.'" Frahs contends: "At most, the court's ruling reveals that it believed appellant was 'capable' of a super strike, rather than likely to commit one."

We disagree with Frahs' interpretation of the record. Although the quoted portion of the trial court's ruling was perhaps inelegantly worded, the court appeared to infer Frahs was likely to commit a super strike offense, largely based on the entirety of his criminal "'history.'"

In conclusion, when we consider the trial court's entire ruling in context, it appears the court was aware of the applicable laws and followed them. (See Evid. Code, § 664 ["It is presumed that official duty has been regularly performed"]; see also *People v. Stowell* (2003) 31 Cal.4th 1107, 1114 ["we apply the general rule 'that a trial court is presumed to have been aware of and followed the applicable law'"].)

11

### III

### DISPOSITION

The trial court's order is affirmed.


MOORE, ACTING P. J.

WE CONCUR:


GOETHALS, J.


MARKS, J.*


*Judge of the Orange County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.